## R. G. PRATT v. MIDLAND MORTGAGE CORPORATION.[1]

December 23, 1932.

No. 29,059.

*Linderman & Shaeffer,* for appellant.
*Wright, Lyons & Wright,* for respondent.

DIBELL, J.

Action by the plaintiff against the defendant to recover for the storage in his garage of a Moon touring car. The court found for the plaintiff, and the defendant appeals from the order denying its motion for a new trial.

The court found that the plaintiff was entitled to storage at $12 a month from June 30, 1929, to February 1, 1930, and from that date to July 1, 1931, at $6 per month, in all $186. The only question of substance is whether the evidence sustains the finding of the court to the effect stated.

The evidence is not clear. The auto was originally sold by the Moon company to one Schott on August 6, 1928, on a conditional

[1]Reported in 246 N. W. 11.

sales contract. The Moon company sold the contract to the defendant, which is an automobile financing corporation. In the latter part of February, 1929, the defendant repossessed the automobile because of default in the terms of payment. The defendant claims that on March 1, 1929, it sold the automobile to the Moon people under a repurchasing agreement contained in the assignment of the Schott contract, and that a note was taken in payment secured by a chattel mortgage on a number of automobiles. In the latter part of June, 1929, the defendant's collector after considerable search found the car in plaintiff's garage. The car had been put in the garage by one Hubbard on May 3, 1929. How he got the possession of it does not appear. The defendant was interested in the car. In some way it knew of Hubbard. Its collector threatened his arrest; and through someone, either his mother or someone assuming to be such, got information that it was in the plaintiff's garage. This was in the latter part of June, 1929. The collector representing the defendant went to the plaintiff's place of business and learned the situation. He found the amount of storage due. The evidence does not show that a specific agreement was made about the storage. The car was left there. It was not abandoned by the defendant. It must have been understood that it was to stay in storage. The going rate was $12 per month for live storage and $6 per month for dead storage. The title then stood in the name of the defendant in the office of the secretary of state.

There is evidence that the plaintiff mailed statements to the Midland people for garage charges a number of times after the car came to his garage and that he talked with them over the telephone. The defendant in February, 1929, obtained a license certificate upon its repossession under the conditional sales contract. In December, 1929, it had the car taken off the tax list upon the theory that it was totally worn out since June, 1929. There was talk of a settlement between the plaintiff and the defendant. At one time it was proposed that the defendant get a new certificate for the car and that the plaintiff would take it and discharge his storage claim.

It was not carried out. There can be no question that the defendant was interested in the car. It may not really have owned it. At least it had the interest of a vendor in a conditional sale or of a chattel mortgagee. The important question is not whether its interest was one or the other, but whether there was a contract that the plaintiff was to have the car in storage. It is fairly deducible from the evidence and surrounding circumstances that there was an understanding between the plaintiff and the defendant that the auto was in storage under a contract between them. This means unavoidable loss to the defendant. If in June, 1929, when the auto was traced to the plaintiff's garage and found in storage the defendant had closed the matter, there would not have been substantial loss. But defendant chose to let the auto stay. The failure to do anything decisive has resulted in waste, which the defendant bears and from which the plaintiff does not gain.

Order affirmed.